UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| ORA EVANS, ET AL. | CIV. ACTION NO. 3:24-00892 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| CATO CORP, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to remand and associated request for costs and fees [doc. # 8] filed by Plaintiffs Ora Evans and Joseph Evans. The motion is opposed. For reasons explained below, IT IS RECOMMENDED that the motion to remand be GRANTED, but that the request for costs and fees be DENIED.

### Background

On September 19, 2023, Ora Evans ("Ora") and her husband, Joseph Evans ("Joseph") (collectively referred to in the singular, as "the Evans") filed the instant suit in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana, against Defendants The Cato Corporation ("Cato") and Cato's employee, Lillian Wilson ("Wilson"), to recover damages that Evans sustained as a result of a December 20, 2022 trip and fall at Cato's Monroe, Louisiana store on Louisville Avenue. (Petition [doc. # 1-2]). Specifically, while shopping in the store's shoe area, Ora tripped and fell over one or more shoe boxes that Wilson and other Cato employees had allegedly left lying haphazardly in the aisle. (Petition, ¶ 12). As a result of the fall, Ora suffered injuries to her left knee, left hip, left side pain, a closed-head injury, cognitive deficits, memory problems, headaches, difficulty concentrating, cervical spine pain with radiation to her left shoulder, pain from her groin to her left foot, dizziness/vertigo, hearing loss,

confusion, difficulty sleeping, and a host of other physical and mental injuries. (Petition, ¶ 17). She seeks damages for loss of earning capacity, plus past and future loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, medical expenses, lost earnings, disability, physical impairment, non-market services, disfigurement, and scarring. *Id.*, ¶ 19. Furthermore, Joseph requests loss of consortium damages stemming from impairment to the marriage relationship caused by Ora's injuries. *Id.*, ¶ 20.

Cato and Wilson filed their answer in state court on November 20, 2023. (Answer [doc. # 1-4]). Nonetheless, over six months later, on July 3, 2024, Cato removed the suit to federal court on the sole basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal). In support of removal, Cato alleged that it is a Delaware corporation, with its principal place of business in North Carolina, whereas Plaintiffs Ora and Joseph, plus Defendant Wilson all share Louisiana citizenship. *Id.*, ¶¶ 15-17.

To circumvent the patent lack of complete diversity between the parties, Cato argues that Evans has no reasonable possibility of recovery against Wilson and that Evans improperly joined Wilson in a transparent attempt to defeat removal. (Notice of Removal, ¶¶ 17-25). Once the improperly joined party (Wilson) is excised from the jurisdictional equation, Cato maintains that there is complete diversity of citizenship between Evans and the sole, properly joined Defendant, i.e., Cato. *Id.*

On July 23, 2024, Evans filed the instant motion to remand and associated request for costs and fees. Cato filed its opposition to the motion on August 9, 2024. (Def. Opp. Memo. [doc. # 10]). Evans filed her reply brief on August 16, 2024. (Pl. Reply [doc. # 11]). Accordingly, the matter is ripe.

## Discussion

Evans contends that the Court lacks both removal and subject matter jurisdiction.

Specifically, she argues that removal was untimely and the presence of the non-diverse Defendant Wilson thwarts complete diversity between the parties. Because the issue proves dispositive, the Court will focus its analysis on the latter contention, while tangentially addressing the procedural/timeliness argument within the parameters of the discussion.

## I.     Motion to Remand

A defendant may remove an action from state court to federal court, provided the action is one in which the federal court may exercise original jurisdiction. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). The removing defendant bears the burden of establishing federal subject matter jurisdiction and ensuring compliance with the procedural requirements of removal. *Id*. Because federal courts are courts of limited jurisdiction, a suit is presumed to lie outside this limited jurisdiction unless and until the party invoking federal jurisdiction establishes to the contrary. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citation omitted). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723 (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

As stated above, Cato invoked the Court's subject matter jurisdiction via diversity, which requires complete diversity of citizenship between plaintiffs and defendants and an amount in controversy greater than $75,000. 28 U.S.C. § 1332(a). Here, Evans unequivocally seeks damages in excess of $75,000. *See* Notice of Removal, ¶ 12. Furthermore, Evans and Cato are diverse from each other. *See* discussion, *supra*. Thus, the sole jurisdictional issue is whether Wilson was improperly joined as a defendant such that her Louisiana citizenship may be disregarded for the purpose of establishing diversity jurisdiction.

It is well established that an improperly joined or nominal defendant will not defeat

subject matter or removal jurisdiction.  *See Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 871 (5th Cir. 1991); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005)).  However, "[t]he improper joinder doctrine constitutes a narrow exception to the rule of complete diversity."  *McDonal*, 408 F.3d at 183.  Therefore, the burden of persuasion on a party claiming improper joinder is a "heavy one."  *Campbell*, 509 F.3d at 669 (citation omitted).  The focus of the improper joinder inquiry must be "on the joinder, not the merits of the plaintiff's case."  *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*).

There are two ways to establish improper joinder:  "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Smallwood*, 385 F.3d at 573 (citing *Travis v. Irby*, 326 F.3d 644, 646-647 (5th Cir. 2003)).  In the case *sub judice*, there are no allegations of actual fraud. Accordingly, the court must determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against [the non-diverse] defendant, which, stated differently, means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [that] defendant."  *Id*.  "A 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder."  *Id*. (citing *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)).[1]

The court may resolve whether Evans has a possibility of recovery against Wilson in one

---

[1] In their memoranda, the parties quibble over the precise phrasing of the improper joinder standard.  However, in *Smallwood*, the Fifth Circuit, sitting *en banc*, settled on the phrasing of the proof required of removing defendants to establish improper joinder and expressly rejected all other formulations, whether they appeared to describe the same standard or not.  *Smallwood*, 385 F.3d at 573.  In fact, the Fifth Circuit's *Smallwood* opinion is *the* authoritative source of this circuit's improper-joinder analysis.  *Int.'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016) ("*IEVM*") (citations omitted).

4

of two ways: 1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the non-diverse defendant under state law (FED. R. CIV. P. 12(b)(6) analysis);² or 2) in the few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court "may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573 (citation omitted).

However, the "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [non-diverse] defendant." *Smallwood*, 385 F.3d at 573-574.³ In the process, the court must consider "all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649 (citations omitted). Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.* When applying the piercing the pleadings method of establishing improper joinder, the "no-evidence" summary judgment standard is inapplicable, and, instead, removing defendants bear the burden of advancing evidence to affirmatively negate a possibility of recovery by the non-diverse party. *Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 220 (5th Cir. 2018) (citation omitted).

Ultimately, if the removing defendant fails to establish improper joinder, then diversity is not complete, and remand is required. *Smallwood*, 385 F.3d at 575. The existence of even a single valid cause of action against a non-diverse defendant requires remand of the entire case to state court. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018) (citation omitted).

---

² To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations [in the plaintiff's petition] must be enough to raise a right to relief above the speculative level," which means that the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

³ In other words, facts that can be easily disproved if not true. *Id.*

In its brief, Cato asserted that the Court should pierce the pleadings and conduct a summary inquiry. (Def. Brief, pg. 7). Nevertheless, because it was within the Court's discretion to consider only the allegations of the petition and to conduct a Rule 12(b)(6) analysis, Cato proceeded to address both approaches.

The Fifth Circuit has made it clear that a court may choose either of the two analyses for improper joinder, but it must use one and only one of them, not neither or both. *IEVM,* 818 F.3d at 207. If the facts set forth in Evans' complaint failed to state a claim for relief against Wilson, then Wilson's improper joinder should have been apparent from the face of the complaint. Therefore, Cato should have removed the matter within 30 days of March 6, 2024, the date when Evans provided Cato with discovery responses which made it unequivocally clear and certain that the amount in controversy exceeded $75,000. (Pl. Resp. to Defs. 1st Set of Interr.; Notice of Removal, Exh. F). In other words, improper joinder premised upon a Rule 12(b)(6)-type analysis is precluded by the time limitations set forth in 28 U.S.C. § 1446(b), which leaves only the piercing the pleadings method as a potential avenue for proving improper joinder.[4]

Under Louisiana law,[5] "a court may hold a corporate officer or employee individually liable for injuries to third persons under certain circumstances." *Kemp v. CTL Distribution, Inc.*, 440 Fed. App'x. 240, 245 (5th Cir. 2011) (citing *Canter v. Koehring Co.*, 283 So.2d 716 (La.

---

[4] Cato seems to suggest in its brief that the case was not removable initially because Evans' complaint did not fail to state a cause of action under the far more liberal pleading standard applicable in state court. (Def. Opp. Brief, pg. 21). It is manifest, however, that the *federal* pleading standard applies to the improper joinder analysis. *IEVM,* 818 F.3d at 208.

[5] The parties analyzed the viability of Evans' claims pursuant to Louisiana law. Therefore, they implicitly agree that the disputed state law issues are governed by the substantive law of Louisiana. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed).

1973)).  "Liability may be imposed on such individuals even if the duty breached arises solely from the employment." *Id.* (citing *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 312 (5th Cir. 2005) and *Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994)).  "If the elements for imposing individual liability on the corporate employee are met, it does not matter that the corporation might also be liable." *Ford*, 32 F.3d at 936 (citing *H.B. 'Buster' Hughes, Inc. v. Bernard*, 318 So.2d 9, 12 (La. 1975)).  Conversely, when considering the sufficiency of allegations purporting to state a claim for an individual employee's personal liability, "[t]he Court is only concerned . . . [with] whether a viable claim may be made against [the defendant employee] personally and not whether [the employer] may be held vicariously liable for the action of its employees." *Johnson v. Packaging Corp. of America*, Civ. Action No. 18-613, 2019 WL 1271053 (M.D. La. Feb. 27, 2019) (internal citations omitted).

In *Canter v. Koehring Co.*, the Louisiana Supreme Court detailed the circumstances under which a corporate officer or employee may be held individually liable for injuries sustained by third parties. *Ford*, 32 F.3d at 935 (citing *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973)).  The court acknowledged that "the officer, agent, or employee may . . . be liable for injury resulting from his fault independent of any obligation imposed upon him by virtue of his employment duties, even though the fault occurs during the course of his employment." *Canter*, 283 So.2d at 722, n.7.  In addition, liability may be imposed on such individuals, even if the duty breached arises solely from the employment relationship. *Ford*, 32 F.2d at 936.

Where the sole basis for the duty breached by the employee or manager is that imposed by virtue of the employment or agency relationship, then an employee may be personally liable if "(1) the employer owes a duty of care to a third person; (2) the employer delegated that duty to a defendant-employee; (3) and the defendant-employee breached the duty through his own fault and lack of ordinary care." *Moore v. Manns*, 732 F.3d 454, 456–57 (5th Cir. 2013) (citations

omitted).

It is manifest that, "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." LA. R.S. § 9:2800.6(A). Generally, "the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm." *Mundy v. Department of Health and Human Resources*, 620 So.2d 811, 813-814 (La. 1993) (citations omitted). Further, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." LA. CIV. CODE ART. 2315. "Fault is a breach of duty owed by one party to another under the particular facts and circumstances of a given case." *Broussard v. Northcott Expl. Co., Inc.*, 481 So.2d 125, 128 (La. 1986). Fault encompasses any conduct that falls below the standard of care that would be exercised by a reasonable person. *See Landry v. Bellanger*, 851 So.2d 943, 949 (La. 2003) and *Esco v. Smith*, 468 So.2d 1169, 1174 (La. 1985).

Evans alleged in her Complaint that she tripped and fell over shoeboxes that Wilson and other store employees haphazardly left in the aisle. (Petition, ¶ 12). She stated that Wilson created the hazard by placing the shoebox on the floor and that Wilson and other employees had actual and/or constructive knowledge of the accumulation of shoeboxes prior to the fall such that, in the exercise of reasonable care, they should have removed them. *See* Petition, ¶ 7.

In support of removal, Cato rebutted Evans' allegations by citing testimony from Ora's June 11, 2024 deposition, where she admitted that she did not know how the boxes came to be on the floor, who was responsible for placing the boxes on the floor, how long the boxes were on the floor, or whether Wilson was aware of the shoebox(es) on the floor. (Ora Depo., pgs. 141-

8

142; Notice of Removal, Exh. H).  Ora's friend, Gwendolyn Davenport, who accompanied Ora to the store on day of the accident, largely echoed Ora's responses to the same line of questioning.  *See* G. Davenport Depo., pg. 53; Notice of Removal, Exh. I.  For her part, Wilson testified that she placed a lone shoebox beneath a display table but ensured that it was not sticking out into the aisle.  (L. Wilson Depo., pgs. 109, 136-138; M/Remand, Exh. D).  Wilson also denied ever seeing the shoe box protruding into the aisle.  *Id*.

On the other hand, Wilson testified that Cato trained her, and other employees, to take care of any obstructions that they observed.  (Wilson Depo., pg. 29).  She further acknowledged that they tried to emphasize keeping the aisle cleaned, but she did not recall making slip, trip, and fall prevention a priority while she was a store manager.  *Id*., pgs. 33, 48.

Wilson admitted that she personally set up the display of boots in the overflow aisle where Ora fell, but used a table, rather than the standard, angled shoe rack.  *See* Wilson Depo., pgs. 59, 62-65, 101.  She also acknowledged that the difficulty with using a makeshift display table was that customers might need to adjust the shoeboxes to access them and/or remove the tops of the boxes.  *See* Wilson Depo., pgs. 64-65.

During her deposition, Wilson reviewed a surveillance video of the subject incident, and agreed that, approximately twenty minutes before the fall, Wilson was standing perhaps as close as three feet away from where Ora fell.  *See* Wilson Depo., pgs. 88-89; Store Surveillance Video; Pl. Reply Memo., Exh. G [doc. # 11-1].  At that time, Wilson knew there was a shoebox that she had placed on the floor, beneath the display table.  (Wilson Depo., pg. 89-93).  Although Wilson placed the box directly beneath the table such that the edges did not protrude, she agreed that the video of Ora's fall depicted movement of the lone, white shoebox that she had placed beneath the table.  *Id*.

Wilson recalled only one shoebox on the floor after Ora's trip and fall, whereas

9

Gwendolyn Davenport testified that there were a lot of shoes and shoeboxes in the aisle where Ora fell. (Wilson Depo., pg. 110; Davenport Depo., pgs. 18-19; Pl. Reply Brief [doc. # 11-1]). Davenport further testified that the two Cato employees at the cash register (one of whom was Wilson) should have been able to see the shoeboxes from their location at the cash register. *Id.*, pg. 20. Nevertheless, neither Wilson, nor the other store employee, warned Ora or otherwise took any action to clear the aisle of the shoeboxes. *Id.*, pgs. 20, 31-32.

The store surveillance video and Gwendolyn Davenport suggest that, for up to twenty minutes prior to Ora's fall, Wilson did not take any steps to address the shoe boxes that were in the aisle. *See* Store Surveillance Video from 12:07 to 12:26; Davenport Depo., pgs. 71-76. Even Wilson conceded that, prior to Ora's fall, she "potentially" could have glanced down the aisle and observed the box(es) from her position at the cash register. *See* Wilson Depo., pgs. 117-119.

In short, Evans has presented evidence that Wilson breached the duty of care that a merchant owes its customers, which, by all appearances, Cato delegated to her, not only as store manager, but also as one of two employees working at the time of the accident. Specifically, the record contains evidence that Wilson personally employed a non-standard display for shoeboxes that could have played a role with why customers had to resort to rearranging boxes such that some were opened and left strewn about the aisle floor.[6] Furthermore, there is evidence that, for up to 20 minutes or even longer, multiple shoes and shoeboxes remained on the floor where Ora ultimately tripped and fell, without any corrective action by Wilson, despite her apparent ability to view the hazard from her nearby position at the cash register.[7]

---

[6] Cato contends that Evans is not permitted to expand her pleadings to allege a defective design theory of recovery. In her petition, however, Evans faulted Wilson for her "stocking" of the product, as well as for her failure to design a safe walkway at or near the subject shoe area. (Petition, ¶¶ 6, 16(L)). Accordingly, the Court finds that Evans' allegations are broad enough to encompass her contention that Wilson negligently stocked the box(es) via an unsafe display.

[7] To be sure, Wilson stated that she saw only one shoebox on the floor after Ora's fall.

10

In *Flowers v. Wal-Mart, Inc.*, the Fifth Circuit denied summary judgment in a slip and fall case where a puddle remained on the floor for more than four minutes in a heavily trafficked area, with at least two Wal-Mart employees who could have seen the puddle. *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 454 (5th Cir. 2023). The Court concluded that there was a genuine dispute of material fact as to whether the dangerous condition existed long enough such that Wal-Mart had constructive notice of it. *Id.*[8] While, in this case, there is no specific evidence that the aisle where Ora fell was a heavily trafficked area, there is testimony that it remained in view of the cash register where Wilson and another Cato employee were present. In fact, in *Courville v. Target Corp. of MN*, the Fifth Circuit denied summary judgment for Target, in part, because there was evidence that a cashier would have been able to see the liquid on the floor whenever a customer used a credit card. *Courville v. Target Corp. of MN*, 232 Fed. App'x. 389, 391 (5th Cir. 2007).

The cases cited by Cato in support removal prove unavailing. For instance, in *Richter v. Kroger Texas, L.P.*, the undersigned found that the store manager was improperly joined based on his uncontradicted affidavit that he was not near the slip and fall when it occurred, nor was he aware of the substance on the floor or any condition that might have caused the substance to be on the floor. *Richter v. Kroger Texas L.P.*, Civ. Action No. 23-00829, 2023 WL 9065606, at *5

---

Davenport, however, disputed this claim. Of course, the Court must resolve disputed issues of fact in favor of remand.

[8] Louisiana law provides that,

> "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

LA. R. S. § 9:2800.6(C)(1).

(W.D. La. Nov. 22, 2023), *R&R adopted* 2024 WL 40215 (W.D. La. Jan. 3, 2024). Here, there is evidence establishing Wilson's personal involvement in the trip and fall. *See* discussion, *supra*.

Similarly, in *Meyers v. Lowes Home Centers, L.L.C.* and *Parker v. PetSmart, L.L.C.*, the removing defendants submitted uncontradicted affidavits from their improperly joined store managers to establish that they had no personal role in the conditions that led to plaintiffs' injuries. *Meyers v. Lowes Home Centers L.L.C.*, Civ. Action No. 21-3384, 2022 WL 1261928, at *3 (W.D. La. Apr. 1, 2022), *R&R adopted,* 2022 WL 1244934 (W.D. La. Apr. 27, 2022); *Parker v. PetSmart, L.L.C.*, Civ. Action No. 21-CV-3327, 2022 WL 1256710, at *5 (W.D. La. Mar. 8, 2022), *R&R adopted,* 2022 WL 1251310 (W.D. La. Apr. 27, 2022). Again, those circumstances are not present here. *See* discussion, *supra*.[9]

Finally, Cato cited *Donaldson v. Sam's E., Inc.*, a case where the Fifth Circuit affirmed summary judgment for the defendant store on a slip and fall claim because plaintiff had no evidence to establish how a wood chip came to rest on the floor or how long it was there before she slipped and fell on it. *See Donaldson v. Sam's E., Inc.*, No. 21-30189, 2021 WL 4898724, at *4 (5th Cir. Oct. 20, 2021) (unpubl.). In this case, however, Evans adduced evidence to show that Wilson personally stocked shoeboxes on or beneath a makeshift table such that it arguably was reasonably foreseeable that customers would have to rearrange the boxes to access them, with the result that some boxes might remain in the aisle. In addition, Evans provided evidence that multiple shoeboxes were strewn about the aisle where she tripped and fell for long enough that Wilson, in the exercise or reasonable care and diligence, should have discovered and ameliorated the hazard.

---

[9] Cato also cited *Henry v. O'Charley's, Inc.*, 861 F.Supp.2d 767, 773 (W.D. La. 2012). Upon review, however, it appears that *Henry* effectively was decided pursuant to the 12(b)(6) method of establishing improper joinder. *Id*. Therefore, it remains inapposite. Regardless, it is not binding on this Court.

Ultimately, the Court does not purport to express an opinion on the merits of the claims asserted against Wilson, or even to suggest that a Louisiana court will find that as a matter of law and fact that Wilson is liable.[10] Rather, the undersigned merely repeats the oft-cited principle that where the removing party grounds its allegations of improper joinder upon a theory that plaintiffs cannot recover from a non-diverse defendant, this court is obliged to "resolve all disputed questions of fact in favor of the plaintiff and then determine whether there could possibly be a valid cause of action set forth under state law." *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 551 (5th Cir. 1981). Doing so here, the Court finds that Cato has failed to establish that Evans has no reasonable possibility of recovery against Wilson, whose continued presence in the suit precludes the exercise of diversity jurisdiction. Consequently, the Court lacks subject matter jurisdiction to entertain the matter. Remand is required. 28 U.S.C. § 1447(c).

## II.     Costs, Fees, and/or Expenses

Evans also seek an award of costs, attorney's fees, and/or expenses stemming from Cato's alleged improvident removal. An order remanding a case to state court may require payment of "just costs and any actual expenses, including attorney fees," that were incurred as a result of removal. 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.* 546 U.S. 132, 141 (2005).

Upon consideration, the Court finds that Cato had an objectively reasonable basis for seeking removal and for the exercise of diversity jurisdiction in this case. Cato supported

---

[10] After all, merits-related discovery is "far afield" from a Rule 12(b)(6) improper joinder inquiry and hardly represents the "discrete and undisputed facts" that may warrant a finding of improper joinder pursuant to *Smallwood*. *Hicks v. Martinrea Auto. Structures (USA), Inc.*, 12 F.4th 511, 516 (5th Cir. 2021).

removal with deposition testimony provided by Ora, Davenport, and Wilson. Cato also cited case law that ostensibly supported removal. Ultimately, when placed in proper context, the deposition testimony did not preclude a viable claim against the non-diverse defendant, and, as a result, Cato's case law proved distinguishable. Nonetheless, given the contradictory facts, together with the fact-intensive nature of the improper joinder analysis for a store employee, the Court cannot conclude that Cato lacked an objectively reasonable basis for removal. Accordingly, an award of costs, fees, and/or expenses under 28 U.S.C. § 1447(c) neither is available, nor warranted.

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motion to remand [doc. # 8] filed by Plaintiffs Ora Evans and Joseph Evans be GRANTED, and that this matter be remanded to the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana, whence it was removed. 28 U.S.C. § 1447(c).

IT IS FURTHER RECOMMENDED that Plaintiffs' associated request for costs, expenses, and/or fees [doc. # 8] be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 16th day of October, 2024.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE